UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PATRICK JACKSON,<br><br>    Plaintiff,<br><br>  v.<br><br>DONALD POMPAN, Physician; et al.,<br><br>    Defendants.<br>_____ / | No. C 12-6049 SI (pr)<br><br>**ORDER OF DISMISSAL WITH PARTIAL LEAVE TO AMEND** |

## INTRODUCTION

Patrick Jackson, formerly an inmate at Salinas Valley State Prison, filed a *pro se* civil rights action under 42 U.S.C. § 1983. His complaint is now before the court for review under 28 U.S.C. § 1915A.

## BACKGROUND

Jackson alleges the following in his complaint:

Upon his arrival at Salinas Valley State Prison on April 13, 2011, he immediately requested surgery for a torn anterior cruciate ligament ("ACL") in his left knee. The records attached to the complaint indicate that he had knee problems for several years. *See* Docket # 1, p. 25. A blood test was done for an MRI screening on April 25, 2011. Jackson thereafter filed inmate appeals about the slow service. He contends that Dr. Pompan did not order the MRI until August 23, 2011.

The MRI was done on September 2, 2011. The MRI results determined that he had an ACL "tear, medial meniscus tear, and lateral femoral condyle chondral lesion." Docket # 1, p. 4; *but see* Docket # 1, p. 57 (MRI report).

On December 7, 2011, Jackson had knee surgery. Immediately thereafter, the surgeon, Dr. Pompan "signed a completely inadequate set of discharge instructions and released the plaintiff on the same day into the care of prison officials." Docket # 1, p. 5.[1] When he returned to prison, the pre-operative pain medication wore off and Jackson submitted an emergency request for stronger medication on December 7, 2011.

On December 13, 2011, Jackson saw Dr. Birdsong, who prescribed a wheelchair with an elevated leg and a pillow for sleeping, but would not prescribe stronger medication. Jackson saw Dr. Bridgnell on December 16, 2012, and he increased the pain medication. On December 20, 2011, Jackson submitted an emergency request for the wheelchair and pillow which had not yet been delivered to him.

On December 21, 2011, defendant Hernandez arrived at Jackson's cell door to take him to his appointment with Dr. Pompan at an outside facility. Jackson showed Hernandez the accommodation verification for a wheelchair for transportation. C/O Hernandez insisted that Jackson be put in restraints while on crutches. This was too painful for Jackson and he told C/O Hernandez that fact. C/O Hernandez abruptly left the area. Jackson wrote another health care services request form.

On December 22, 2012, Jackson received his wheelchair and pillow. Later that day, he was taken to an appointment with Dr. Pompan. He complained to Dr. Pompan about the medications, but Dr. Pompan ignored him and wrote notes that ignored his complaints.

On December 26, 2011, Jackson filed an inmate appeal about C/O Hernandez. The appeal was screened out improperly by J. Villafuerte. Jackson resubmitted the inmate appeal and then filed one about defendant Villafuerte's actions.

On January 16, 2012, defendant D. Schaffer informed Jackson of an upcoming classification hearing and asked if Jackson wanted to attend. Jackson said that he did. Jackson suspected something was amiss and requested a copy of the classification report, which he

---

[1] The discharge instructions included instructions to resume daily prescription medication, keep the dressing site dry and intact, apply ice packs, elevate extremity, "crutches with written instructions given," and a follow-up appointment in several days. *See* Docket # 1, p. 28.

2

received on March 1, 2012. He learned from the report that D. Schaffer, G. Jiminez, D. Rocha, & D. Asuncion "illegally held committee without the plaintiff, falsified legal documents, and decided upon his transfer while lying on the summary saying the plaintiff agree with the decision." Docket # 1, p. 9.

Defendant Mazariegos improperly handled an inmate appeal.

On March 8, 2012, Jackson was transferred "in retaliatory fashion for the grievances" he had filed. Docket # 1, p. 9.

## DISCUSSION

A federal court must engage in a preliminary screening of any case in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity. *See* 28 U.S.C. § 1915A(a). In its review the court must identify any cognizable claims, and dismiss any claims which are frivolous, malicious, fail to state a claim upon which relief may be granted, or seek monetary relief from a defendant who is immune from such relief. *See id.* at 1915A(b). *Pro se* pleadings must be liberally construed. *See Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege two elements: (1) that a right secured by the Constitution or laws of the United States was violated and (2) that the violation was committed by a person acting under the color of state law. *See West v. Atkins*, 487 U.S. 42, 48 (1988).

Federal Rule of Civil Procedure 8(a)(2) requires "a short and plain statement of the claim showing that the pleader is entitled to relief." "Specific facts are not necessary; the statement need only . . . give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (citations and internal quotation marks omitted). Although a complaint "does not need detailed factual allegations, . . . a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. . . . Factual allegations must be enough to raise a right to relief above the speculative level." *Bell*

*Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted). A complaint must proffer "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570.

A. <u>Deliberate Indifference To Medical Needs</u>

Deliberate indifference to a prisoner's serious medical needs amounts to the cruel and unusual punishment prohibited by the Eighth Amendment. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). A prison official violates the Eighth Amendment only when two requirements are met: (1) the deprivation alleged is, objectively, sufficiently serious, and (2) the official is, subjectively, deliberately indifferent to the inmate's health or safety. *See Farmer v. Brennan*, 511 U.S. 825, 834 (1994).

Liberally construed, the *pro se* complaint states a cognizable claim against Dr. Pompan for the alleged delay in ordering an MRI for Jackson.

Even with liberal construction, however, the complaint does not state any other claim for deliberate indifference to serious medical needs. Jackson alleges that Dr. Pompan gave him "completely inadequate" discharge orders after his knee surgery, but fails to allege what the inadequacies were. The discharge orders attached to the complaint plainly show that he did receive some discharge orders, even if he disagrees with them. *See* Docket # 1, p. 28 (discharge orders include directive to resume daily medications and crutches); *see generally Gant v. Wallingford Bd. Of Educ.*, 69 F.3d 669, 674 (2d Cir. 1995)(a document attached to the complaint "will be read to evidence what it incontestably shows once one assumes that it is what the complaint says it is (or, in the absence of a descriptive allegation, that it is what it appears to be)"). "A difference of opinion between a prisoner-patient and prison medical authorities regarding treatment does not give rise to a § 1983 claim." *Franklin v. Oregon*, 662 F.2d 1337, 1344 (9th Cir. 1981). Jackson apparently wanted stronger medications than he received and wanted a wheelchair instead of crutches, but none of his allegations suggest these to be any more than differences of opinion between the prisoner-patient and the doctor as to the appropriate post-operative care following knee surgery. If he wishes to pursue this claim in his amended complaint, he must include allegations that show this to be more than a difference of opinion

4

about appropriate post-operative care.

The complaint does not state a claim against C/O L. Hernandez, who allegedly insisted that Jackson be restrained while on crutches rather than to locate a wheelchair to take him to a doctor's appointment. Deliberate indifference is shown by "(a) a purposeful act or failure to respond to a prisoner's pain or possible medical need and (b) harm caused by the indifference." *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006); *see Wood v. Housewright*, 900 F.2d 1332, 1335 (9th Cir. 1990) (delay in treatment does not violate Eighth Amendment unless it causes harm); *Van Court v. Lehman*, 137 Fed. Appx. 948, 950 (9th Cir. 2005) (one day delay in receiving pain medication not sufficient to demonstrate deliberate indifference to a serious medical need). The complaint does not suggest Hernandez's actions caused any actual harm. According to Jackson, he was taken to the follow-up medical appointment the next day. *See* Docket # 1, pp. 5-6. Nothing in the complaint indicates that the one-day delay made any difference to his medical care.

The complaint does not allege any particular conduct by defendants Zamora and Lee that amounted to deliberate indifference. The allegations that Zamora is the chief of the California correctional health care services, that Lee is the staff services manager for the California correctional health care services, and that they are responsible for health care services in the CDCR do not suffice to show their liability for any alleged deficiencies in Jackson's medical care. There is no respondeat superior liability under § 1983, i.e., no liability under § 1983 solely because one is responsible for the actions or omissions of another. *See Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989).

B.  <u>Inmate Appeals</u>

Jackson asserts claims against prison officials who made errors in processing his inmate appeals and failed to find in his favor on his administrative appeals. The mishandling or failure to grant an inmate's appeal in the prison administrative appeal system does not amount to a due process violation. There is no federal constitutional right to a prison administrative appeal or grievance system for California inmates. *See Ramirez v. Galaza*, 334 F.3d 850, 860 (9th Cir.

5

2003); *Mann v. Adams*, 855 F.2d 639, 640 (9th Cir. 1988); *Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1996) (prison grievance procedure is procedural right that does not give rise to protected liberty interest requiring procedural protections of Due Process Clause); *Smith v. Noonan*, 992 F.2d 987, 989 (9th Cir. 1993). Prison officials are not liable for a due process violation for simply failing to process an appeal properly or failing to find in plaintiff's favor.

The complaint also does not state a claim for deliberate indifference to serious medical needs against any of the several people who allegedly denied or mishandled Jackson's inmate appeals. By the time the several defendants decided his inmate appeals, the medical problems in those appeals apparently had been resolved. The alleged improper handling of the inmate appeal about Hernandez's actions by defendants Villafuerte and Mazariegos occurred after Jackson had already had his follow-up medical appointment. *See* Docket # 1, pp. 40, 72-73.

C. Classification Hearing

Jackson alleges that he was not allowed to appear at his classification hearing. He had no federally-protected right to appear at the classification hearing. He does not allege that he was in administrative segregation or disciplinary segregation, or that either form of segregated housing was being contemplated for him. The classification committee's report also shows no segregated housing or discipline was contemplated; indeed, the report appears to be rather favorable, as it noted his classification score had been adjusted downward due to two quarters without CDC-115s, that he had been endorsed to the less restrictive 270-degree housing, and that the committee elected to refer him "for transfer consideration as part of the activation of LAC IV (270) GP. Transfer is non-adverse in nature. Jackson will retain his current Custody and MG/PG upon transfer." Docket # 1, p. 100.

The Due Process Clause of the Fourteenth Amendment of the U.S. Constitution protects individuals against governmental deprivations of life, liberty or property without due process of law. Changes in conditions of confinement may amount to a deprivation of a constitutionally protected liberty interest, provided that the liberty interest in question is one of real substance. *Sandin v. Conner*, 515 U.S. 472, 477-87 (1995). When – as apparently was the case here – there

6

was no change in conditions of confinement that implicated a liberty interest of real substance, there was no right to due process in connection with the decision-making process by prison officials. *See Chappell v. Mandeville*, — F.3d —, 2013 WL 364203, *9-*10 (9th Cir. 2013) (contraband watch not such an extreme change in conditions of confinement as to trigger due process protections). Since he had no federally-protected due process right in connection with the classification committee meeting, Jackson's absence from the meeting did not violate due process.

The allegedly false statements in the classification committee report – i.e., the statements that he was present at the meeting and agreed with the transfer – do not give rise to a federal claim because the inaccuracy of records compiled or maintained by the government is not, standing alone, sufficient to state a claim of constitutional injury under the Due Process Clause. *See Paul v. Davis*, 424 U.S. 693, 711-714 (1976); *Reyes v. Supervisor of DEA, et al.*, 834 F.2d 1093, 1097 (1st Cir. 1987) (no due process claim for false information maintained by police department); *Pruett v. Levi*, 622 F.2d 256, 258 (6th Cir. 1980) (mere existence of inaccuracy in FBI criminals files does not state constitutional claim).

C.  Retaliatory Transfer

Jackson contends that he was improperly transferred to a different prison. The transfer itself did not violate his federal right to due process. Prisoners have no constitutional right to incarceration in a particular institution. *See Olim v. Wakinekona*, 461 U.S. 238, 244-48 (1983); *Meachum v. Fano*, 427 U.S. 215, 224 (1976). A prisoner's liberty interests are sufficiently extinguished by his conviction that the state may generally confine or transfer him to any of its institutions, to prisons in another state or to federal prisons, without offending the Constitution. *See Rizzo v. Dawson*, 778 F.2d 527, 530 (9th Cir. 1985) (intrastate prison transfer does not implicate Due Process Clause). "It is well settled that the decision where to house inmates is at the core of prison administrators' expertise." *McKune v. Lile*, 536 U.S. 24, 39 (2002). The claim that the transfer violated due process is dismissed.

Although a transfer is generally permissible, prison officials cannot transfer a prisoner

7

from one correctional institution to another in order to punish or retaliate against the prisoner for exercising his constitutional rights. *See Schroeder v. McDonald*, 55 F.3d 454, 461 (9th Cir. 1995); *Rizzo v. Dawson*, 778 F.2d at 532. "Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." *Rhodes v. Robinson*, 408 F.3d 559, 567-68 (9th Cir. 2005) (footnote omitted).

The complaint fails to state a claim for a retaliatory transfer. The complaint does not allege who retaliated against him. Jackson alleges that he "was transferred in retaliatory fashion for the grievances and changes that was called upon the Salinas Valley State Prison administration." Docket # 1, p. 9. If he wishes to pursue this claim, he needs to identify the defendant(s) for this claim. He also needs to allege facts showing the transfer to have been an adverse action, as nothing in the complaint suggests it was. He also needs to affirmatively allege that the decision did not reasonably advance a legitimate correctional goal. His exhibit indicates that the transfer was non-adverse and was done for population management purposes upon the opening of a new 270-degree general population facility at the California State Prison - Lancaster, which appears to be a legitimate penological purpose. See Docket # 1, p. 100.

In the foregoing paragraphs, the court has identified deficiencies in Jackson's various claims. It may be that Jackson can cure some of these deficiencies with amendment, so the complaint will be dismissed with leave to amend.

Finally, Jackson sent a letter inquiring whether his case had been filed in the proper division of this district. The answer to his inquiry is that prisoner civil rights actions may be assigned to any division in this district.

/ / /

/ / /

8

**CONCLUSION**

For the foregoing reasons, the complaint is dismissed with leave to amend. The amended complaint must be filed no later than **April 26, 2013**, and must include the caption and civil case number used in this order and the words AMENDED COMPLAINT on the first page. Plaintiff is cautioned that his amended complaint must be a complete statement of his claims. *See Lacey v. Maricopa County*, 693 F.3d 896, 928 (9th Cir. 2012) (en banc) ("For claims dismissed with prejudice and without leave to amend, we will not require that they be repled in a subsequent amended complaint to preserve them for appeal. But for any claims voluntarily dismissed, we will consider those claims to be waived if not repled.") Failure to file the amended complaint by the deadline will result in the dismissal of all claims and defendants except the one cognizable claim alleged against Dr. Pompan for delay in ordering the MRI.

IT IS SO ORDERED.

Dated: March 13, 2013

_____
SUSAN ILLSTON
United States District Judge

9