UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PATRICK JACKSON, | No. C 12-6049 SI (pr) |
| Plaintiff, | **ORDER GRANTING POMPAN'S MOTION FOR SUMMARY JUDGMENT** |
| v. | |
| DONALD POMPAN, Physician; et al., | |
| Defendants. | |

## INTRODUCTION

Patrick Jackson filed this *pro se* prisoner's civil rights action under 42 U.S.C. § 1983. At the initial screening stage, the court dismissed several defendants and claims, and found that the complaint stated a claim against Dr. Donald Pompan for deliberate indifference to medical needs based on the alleged delay in ordering an MRI for Jackson. Dr. Pompan now moves for summary judgment against Jackson. Jackson has not filed an opposition to the motion, although he had requested and received an extension of the deadline to file his opposition. For the reasons discussed below, the motion will be granted and judgment entered in defendants' favor.

## BACKGROUND

The claim remaining for adjudication concerns the five-month delay before Jackson received a requested MRI to evaluate problems with the anterior cruciate ligament ("ACL") in his left knee. The following facts are undisputed unless otherwise noted:

The events and omissions giving rise to the complaint occurred at Salinas Valley State Prison from April 2011 through December 2011. At the time, Jackson was an inmate at Salinas Valley. Also at that time, Dr. Pompan was board-certified in orthopedic medicine and was in

1  private practice. Although Dr. Pompan was not an employee of Salinas Valley or the CDCR,
2  Salinas Valley had contracted with him "to consult with inmates concerning orthopedic issues
3  and to perform surgery when approved by the prison." Docket # 23-1 at 2.

4  Dr. Pompan did not control scheduling for inmate medical care. Prison staff scheduled
5  inmates for visits to Dr. Pompan.

6  Dr. Pompan was not the ultimate decision-maker as to whether and when an inmate would
7  receive particular medical care. Dr. Pompan could "recommend" particular tests and treatments
8  (e.g., x-rays, MRIs and surgery) for an inmate but the decision as to which tests or treatments
9  were to be provided to an inmate was made within the prison. *See* Docket # 23-1 at 2; Docket
10  # 23-2 at 2. "The ultimate decision as to whether to provide medical services to inmates is made
11  by the prison through its internal Utilization Management (UM) process. Outside specialists,
12  including Dr. Pompan, have no input into the prison's UM process." Docket # 23-2 at 2.

13  Jackson arrived at Salinas Valley on April 13, 2011, and "immediately requested surgery
14  for torn A.C.L." Docket # 1 at 3. There is no evidence as to whether this was a self-diagnosis
15  or a doctor had diagnosed a torn ACL.

16  On April 19, 2011, Jackson was seen by Dr. Bridgnell for his chronic left knee pain from
17  an injury sustained in 2002. Dr. Bridgnell wrote: "We will order an MRI of the left knee at this
18  time. I suspect possible ACL pathology. I also changed the patient's NSAID to Tylenol No. 3
19  two tablets p.o. b.i.d. I discussed with the patient no excessive activity, primarily no excessive
20  squatting or running, etc. at this time. We will also order a followup with Dr. Pompan for
21  evaluation for arthroscopic surgery following the MRI results." Docket # 23-2 at 8-8.

22  Dr. Bridgnell saw Jackson again on June 6, 2011 and noted that the MRI was currently
23  pending and that he intended to discuss with onsite services the status of the referral for services.

24  Dr. Birdsong examined Jackson on July 27, 2011. Dr. Birdsong noted that there was a
25  referral for services for an MRI, but he was unsure of the status of it and therefore would send
26  it to the chief physician and surgeon to see what was going to be done. Within a week, the MRI
27  was approved.

28  On August 23, 2011, Dr. Pompan saw Jackson. This "was the first time [Dr. Pompan]

2

met Mr. Jackson and the first time that [Dr. Pompan] learned of his knee problems." Docket # 23-1 at 3. Dr. Pompan viewed Jackson's knee problem as a chronic problem that was not urgent. Dr. Pompan recommended that the previously-ordered MRI be done, and prescribed range of motion exercises. Docket # 23-1 at 3, 13; *see also* Docket # 1 at 4 (verified complaint alleging that "Dr. Pompan hadn't even ordered the M.R.I. until August 23rd, 2011").

On September 1, 2011, an MRI was done on Jackson's knee.

On October 27, 2011, Dr. Pompan saw Jackson to review the report from the MRI. According to Dr. Pompan, the "report was inconclusive, but an ACL tear was suggested." Docket # 23-1 at 3. Dr. Pompan requested permission from the prison to perform an ACL reconstruction operation because Jackson's knee was unstable.

Someone at the prison scheduled the knee surgery. On November 29, 2011, Dr. Pompan met with Jackson to discuss his pre-operation instructions.

On December 7, 2011, Dr. Pompan performed a successful reconstruction of the left ACL and a successful meniscectomy at Las Ventanas Surgery Center in Salinas. After the surgery, Dr. Pompan prescribed Vicodin as needed for pain. Jackson was sent back to the prison that day with discharge instructions he received from a nurse. Dr. Pompan provided some of the follow-up care thereafter.[1] Jackson had some post-operative pain, but "post-operative pain is common, and there were no complications associated with the surgery or Mr. Jackson's recovery while under [Dr. Pompan's] care." Docket # 23-1 at 5.

## LEGAL STANDARD FOR SUMMARY JUDGMENT

Summary judgment is proper where the pleadings, discovery and affidavits show that there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court will grant summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial . . . since a complete

---

[1] The court earlier dismissed Jackson's claim against Dr. Pompan for post-operative care. *See* Docket # 7 at 4-5; Docket # 11 at 1-2.

failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (a fact is material if it might affect the outcome of the suit under governing law, and a dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.") The moving party bears the initial burden of identifying those portions of the record which demonstrate the absence of a genuine issue of material fact. The burden then shifts to the nonmoving party to "go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324 (citations omitted.) The Court's function on a summary judgment motion is not to make credibility determinations or weigh conflicting evidence with respect to a disputed material fact. *See T.W. Elec. Serv. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987). The evidence must be viewed in the light most favorable to the nonmoving party, and the inferences to be drawn from the facts must be viewed in a light most favorable to the nonmoving party. *See id.* at 631.

A verified complaint may be used as an opposing affidavit under Rule 56, as long as it is based on personal knowledge and sets forth specific facts admissible in evidence. *See Schroeder v. McDonald*, 55 F.3d 454, 460 & nn.10-11 (9th Cir. 1995) (treating plaintiff's verified complaint as opposing affidavit where, even though verification not in conformity with 28 U.S.C. § 1746, plaintiff stated under penalty of perjury that contents were true and correct, and allegations were not based purely on his belief but on his personal knowledge). Here, Jackson's complaint was made under penalty of perjury and is considered as evidence in evaluating the motion for summary judgment.

## DISCUSSION

Deliberate indifference to an inmate's serious medical needs violates the Eighth Amendment. *See Estelle v. Gamble*, 429 U.S. 97, 104 (1976); *Toguchi v. Chung*, 391 F.3d 1051, 1057 (9th Cir. 2004). A defendant violates the Eighth Amendment only when two requirements

4

are met: (1) the deprivation alleged is, objectively, sufficiently serious, and (2) the official is, subjectively, deliberately indifferent to the inmate's health or safety. *See Farmer v. Brennan*, 511 U.S. 825, 834 (1994).

The Eighth Amendment claim requires that there be an objectively serious medical need. A "serious" medical need exists if the failure to treat an inmate's condition could result in further significant injury or the "unnecessary and wanton infliction of pain." *Id.* The evidence in the record showing that Jackson had chronic knee pain that turned out to include an ACL tear suffices to permit a jury to find the existence of objectively serious medical needs. *Cf. Lolli v. County of Orange*, 351 F.3d 410, 419 (9th Cir. 2003) (Type I diabetes is a serious medical need).

The problem for Jackson concerns the subjective, deliberate indifference, prong of the Eighth Amendment test. A defendant is "deliberately indifferent" if he knows that an inmate faces a substantial risk of serious harm and disregards that risk by failing to take reasonable steps to abate it. *Farmer*, 511 U.S. at 837. The defendant must not only "be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists," but he "must also draw the inference." *Id.* If the defendant should have been aware of the risk, but was not, then he has not violated the Eighth Amendment, no matter how severe the risk. *Gibson v. County of Washoe*, 290 F.3d 1175, 1188 (9th Cir. 2002). "[T]o prevail on a claim involving choices between alternative courses of treatment, [an inmate] must show that the chosen course of treatment 'was medically unacceptable under the circumstances,' and was chosen 'in conscious disregard of an excessive risk to [the inmate's] health.'" *Toguchi*, 391 F.3d at 1058 (citation omitted).

When, as here, the prisoner seeks damages against a defendant, the "inquiry into causation must be individualized and focus on the duties and responsibilities of each individual defendant whose acts or omissions are alleged to have caused a constitutional deprivation." *Leer v. Murphy*, 844 F.2d 628, 633 (9th Cir. 1988). *Leer* explained that "it is important to distinguish the causal connection required when a plaintiff seeks injunctive or declaratory relief as opposed to damages." *Id.* In the former case, a broader and more generalized approach to causation is taken. *Id.*

> When plaintiffs, such as the inmates, seek to hold an individual defendant personally liable for damages, the causation inquiry between the deliberate indifference and the eighth amendment deprivation must be more refined. We must focus on whether the individual defendant was in a position to take steps to avert the [harm], but failed to do so intentionally or with deliberate indifference. In order to resolve this causation issue, we must take a very individualized approach which accounts for the duties, discretion, and means of each defendant. . . . Sweeping conclusory allegations will not suffice to prevent summary judgment. . . . The prisoner must set forth specific facts as to each individual defendant's deliberate indifference.

*Id.* at 633-34 (citations omitted). A defendant thus would not have exposure for every shortcoming in the medical department at the prison, but only if he personally was deliberately indifferent.

Dr. Pompan has met his burden on summary judgment by showing the absence of evidence that he acted with the deliberate indifference necessary for an Eighth Amendment violation. Jackson blames Dr. Pompan for the delay from April 13 (when he first requested an MRI) until September 1 (when he received the MRI) but the evidence does not support such an assertion since it is undisputed that Dr. Pompan did not even learn of the knee problem until a week before it was done. The evidence is undisputed that it was prison staff (rather than Dr. Pompan) who scheduled inmate visits with Dr. Pompan and made the ultimate decision as to whether an MRI and surgery would be provided to an inmate such as Jackson. The evidence also is undisputed that Dr. Pompan had no role in Jackson's medical care before August 23, 2011; that Dr. Pompan recommended that the previously ordered MRI be done when he first saw Jackson; and that Jackson received the desired MRI nine days later. The evidence also is undisputed that Dr. Pompan successfully operated on Jackson's knee on December 7, 2011, after someone at the prison scheduled the knee surgery Dr. Pompan had recommended. There simply is no evidence from which a reasonable jury could find that Dr. Pompan caused the five-month delay in the scheduling of the MRI. Even with respect to the one week gap in time between Jackson's first visit to Dr. Pompan and the MRI, there is no evidence that Dr. Pompan had scheduling authority for the MRI or that taking a week to perform a non-emergency MRI caused any harm to the patient. Jackson has failed to show or present evidence that would allow a reasonable jury to find, with regard to Dr. Pompan, that there was "(a) a purposeful act or failure to respond to a prisoner's pain or possible medical need and (b) harm caused by the

6

indifference." *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006). When the evidence is viewed in the light most favorable to Jackson, and inferences therefrom drawn in his favor, no reasonable jury could return a verdict for him and against Dr. Pompan. Dr. Pompan therefore is entitled to judgment as a matter of law on the Eighth Amendment claim.

## CONCLUSION

For the foregoing reasons, Dr. Pompan's motion for summary judgment is GRANTED. (Docket # 23.) The other defendants were dismissed in an earlier order, and the remaining defendant has been found entitled to summary judgment. Judgment will be entered in all defendants' favor and against plaintiff.

IT IS SO ORDERED.

Dated: May 19, 2014

_____
SUSAN ILLSTON
United States District Judge